SOUTHLAND ICE COMPANY v. MRS. JANE Y. McCALLUM, SECRETARY OF STATE.

No. 5155. Decided February 12, 1930.
(24 S. W., 2d Series, 344.)

*J. W. Hassell,* for relator.

Mr. Judge CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding brought by relator, Southland Ice Company, a private corporation, against respondent, Mrs. Jane Y. McCallum, Secretary of State, of Texas, to compel her to accept the sum of $525.75 in payment of its franchise tax for the year beginning May 1st., 1928, and ending April 30th, 1929.

Relator is a private corporation chartered on January 29, 1927, under the provisions of Chapter 77, Acts Regular Session 39th Legislature, 1925, printed as Articles 1538a to 1538m, inclusive, R. C. S. of Texas, 1925, relating to non-par corporations.

The charter of relator provides for 40,000 shares of preferred stock, and 160,000 shares of common stock, all without nominal or par value. The record shows that 8,250 shares of the preferred, and 36,000 of the common stock has been sold, as follows:

### Preferred Stock Sales

| | | | |
|---|---|---|---|
| June 29, 1927, | 4750 shares @ $90 per share | ........ | $427,500 |
| Nov. 20, 1927, | 1250 shares @ 90 per share | ........ | 112,500 |
| March 14, 1928, | 2250 shares @ 90 per share | ........ | 202,500 |
| Total...........8250 | | Total...........| $742,500 |

### Common Stock Sales

| | | | |
|---|---|---|---|
| June 29, 1927, | 16,000 shares @ $10 per share | ........ | $160,000 |
| Sept. 10, 1927, | 16,500 shares @ 10 per share | ........ | 165,000 |
| Jan. 9, 1928, | 1,000 shares @ 10 per share | ........ | 10,000 |
| Feb. 8, 1928, | 1,500 shares @ 10 per share | ........ | 15,000 |
| Feb. 20, 1928, | 1,000 shares @ 10 per share | ........ | 10,000 |
| Total shares....36,000 | | Total...........| $260,000 |

Total money value of all stock sold $1,102,500.

From the above it is disclosed that the preferred stock was all sold at $90 per share, and the common stock at $10 per share.

The record further discloses that relator, on April 30th, 1928, tendered to the respondent $525.75, contending that it is only due to pay the franchise tax on the amount of its stock already sold, and that it is due no tax on its unsold stock.

The respondent declined to accept the amount tendered, and refused to issue to relator a receipt or certificate showing the payment of its franchise tax for the year in question, contending that under the laws of this state governing such matters relator is due to pay the franchise tax on both its issued and unissued stock, and that the tax due is $1,550, instead of the amount tendered. In other words the respondent contends that the tax due should be computed by taking the entire number of shares authorized by the charter and valuing the shares sold at what they actually sold for, then taking the unsold shares, and valuing them at the average price the shares sold brought, and then collect the tax on the total amount thus produced. The contention of the respondent produces the total sum of $5,200,000 as a basis for computing the franchise tax, instead of $1,102,500 contended for by relator. The respondent contends that the preferred stock sold for an average price of $90 per share, and the common stock an average price of $10 per share, and that the value for computation of the franchise tax should be as follows:

### Preferred Stock Valuation

| | |
|---|---|
| 8,250 shares sold at $90 average per share | $ 742,500 |
| 31,750 shares not yet sold at $90 per share | 2,857,500 |
| Total preferred stock | $3,600,000 |

### Common Stock Valuation

| | |
|---|---|
| 36,000 shares sold at $10 average per share | $ 360,000 |
| 124,000 shares unsold at $10 average per share | 1,240,000 |
| Total valuation common stock | $1,600,000 |
| Total valuation for taxation purposes | $5,200,000 |

Under the contention of respondent the tax on the above $5,200,000 will be computed as follows:

| | |
|---|---|
| $1,000,000 at 50¢ per thousand | $ 500.00 |
| 4,200,000 at 25¢ per thousand | 1,050.00 |
| Total | $1,550.00 |

In order to determine the amount of tax due in the instant case it becomes necessary to construe the various provisions of what is

known as Senate Bill No. 46, Chapter 77, Acts 39th Legislature, 1925, relating to non-par corporations. The act is also printed as Articles 1538a to 1538m inclusive, R. C. S. of Texas, 1925.

Up to the time of the enactment of the act above referred to there was no law in force in Texas authorizing the chartering of non-par corporations, though it had been held by our courts that a foreign corporation so chartered had a right to obtain a permit and do business here on payment of the proper amount of franchise tax. It will thus be seen that up·to the passage of this act there existed under our laws a discrimination in favor of foreign corporations, because a non-par foreign corporation could transact business here, while a domestic corporation was compelled to issue only par value stock. Before the passage of this act all domestic corporations paid the franchise tax under the schedule fixed by Articles 7084 and 7090 R. C. S. of Texas, 1925, and foreign corporations paid such tax under the schedule provided by Article 7085, R. C. S. The filing fees for domestic and foreign corporations were provided for in the sixth and seventh paragraph respectively of Article 3914, R. C. S.

In regard to the franchise tax due to be paid by non-par corporations, it is the contention of respondent that under the provisions of the 1925 act, supra, there is manifested a plain intent on the part of the Legislature not to discriminate in the matter of franchise taxes between par and non-par corporations, and that when Article 1538i, R. C. S. is read in the light of the balance of the act it is plainly manifest that it refers to and must be construed in the light of Article 7084, R. C. S. We sustain this contention.

Article 1538i, supra, reads as follows:

"Franchise Tax.—The amount of franchise tax to be paid by any corporation having shares of stock without nominal or par value shall be determined in the manner as now or hereafter prescribed by the laws of this State, except that such shares without nominal or par value shall, for the purpose of computing such tax only, be treated and considered as having and being of the value actually received by the corporation for the issuance of such shares as disclosed by the charter or any amendment thereof, as provided in Article 1538d hereof, or by a certificate as provided in Article 1538e hereof."

A careful reading of the above article discloses that it, within itself alone, contains no schedule of charges for franchise taxes,

or the amount of stock upon which the tax is to be computed; it merely provides that the amount of franchise tax shall be determined in the manner now or hereafter prescribed by the laws of this State. There is absolutely no law that could here be referred to except Article 7084, R. C. S.

Nowhere in the above quoted article, 1538i, is any idea expressed, either by express words, or by implication that would lead us to believe the Legislature intended to discriminate in favor of non-par corporations, and against corporations with par value stock, so that the former will only pay the franchise tax on its issued stock, while the latter must pay on its entire authorized capital. Furthermore, the article referred to nowhere expresses an intention that only issued shares of a non-par corporation shall be considered in computing its franchise tax. The article in question does not use the word *any corporation having issued shares of stock,* but on the other hand, the words, *"any corporation having shares of stock, without nominal or par value,"* are used. We hold that *"having shares of stock without nominal or par value,"* are here used so as to mean, so far as franchise taxes are concerned, the same as *authorized capital stock.* Certainly had the Legislature intended to compute the tax only on the shares issued and sold, and thus discriminate against par value corporations, the words *having shares issued and sold,* or words of like import would have been used, instead of the word *"having shares of stock."* This view is further sustained when it is noted that Article 1538i uses practically the same language as Article 1538f of the Act, that is, "in the manner now or hereafter prescribed," etc. Also Article 1538f, Section (a) clearly refers to Article 3914, R. C. S. 1925, as to filing fees. In like manner Article 1538i refers to Article 7084 for a schedule to compute the franchise tax. Under Article 1538f, it is clear that the filing fee must be computed on the entire stock, and likewise under Article 1538i construed in conjunction with the entire act, the franchise tax must be computed under the provisions of Article 7084, on the entire stock, both issued and unissued. The issued shares are valued at the price for which they were sold, and the unissued shares are valued, for the purpose of computing the franchise tax, at the average price for which the stock of the same class actually sold. If the Legislature had not intended the unissued stock to be valued and included for the purpose of computing the franchise tax, it would never have provided in Article

1538i that, "such shares without nominal or par value shall, for the purpose of computing the tax only, be treated and considered as having and being of the value actually received by the corporation," etc. Instead of these words it would have simply provided that the corporation should be liable for a franchise tax only on the stock actually sold, or words of like import.

Finally we hold that since Article 1538i expressly provides that "the amount of franchise tax to be paid by any corporation having shares of stock without nominal or par value shall be determined in the manner as now or hereafter prescribed by the laws of this state," and since the clause "now or hereafter prescribed by the laws of this state," can only have reference to Article 7084, it being the only law that could be referred to; and since Article 7084 by express terms requires the tax to be paid on all stock, issued and unissued, it follows that Article 1538i expressly requires the tax to be paid by non-par corporations on its entire authorized stock. Furthermore, since said Article 1538i provides "such shares without nominal or par value shall, for the purpose of computing such tax only, be treated and considered as having and being of the value actually received by the corporation for the issuance of such shares as disclosed by the charter or any amendment thereof" etc.; it follows that such article has provided a certain and sure basis of valuation for the stock, issued and unissued, by providing that same shall be valued for franchise tax purposes at the value actually received for the issued stock.

The tax due in the instant case is $1,550, as contended by the Secretary of State, therefore the mandamus should be refused. We so recommend.

The opinion of the Commission of Appeals is adopted and mandamus is refused.

<div align="right">

*C. M. Cureton,* Chief Justice.